# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ANTOINE BRUCE, | ) |
| Plaintiff | ) ) ) ) |
| vs. | ) Case No. 1:09-CV-2378-VEH-HGD |
| CONSTANCE REESE, et al., | ) ) ) |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the plaintiff's *pro se* motion for temporary restraining order or preliminary injunction. (Doc. #2). This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). The plaintiff, an inmate at the Federal Correction Institution in Talladega, Alabama, seeks an order enjoining Warden Constance Reese and Lieutenants Davis and Fals from exposing him to hazardous conditions by disabling his ability to flush his toilet or by housing him in contaminated areas; from threatening, harming, or harassing him "in any fashion" which would cause physical injury or loss of life; and from confiscating his "property and materials necessary to prepare and mail legal pleadings." (Doc. #2, p.8). In support of the motion, the

plaintiff alleges that during the period from October 30, 2009, to November 13, 2009, he was restrained at the ankles, hands and waist, and housed in a cell in which the toilet was disabled, causing the cell to become contaminated with urine and feces. *Id*. at 10. He also alleges that during this time, meal trays were withheld "dozens of times" causing him to become weak and malnourished. *Id*. at 10.

The plaintiff argues that he is now in "imminent danger of serious harm" because of an incident that occurred on November 25, 2009. (Doc. #2, p.10). On that date, he alleges that Warden Reese and Lieutenant Davis became angry after learning that he had filed a lawsuit in federal court and, as a result, "threatened [his] life with a gun and pepper spray and put [him] into restraints without cause." *Id*. He also alleges that he was denied food for two consecutive days thereafter and that he was stripped of his "property, mattress and linens." *Id*. at 2 and 10. As best as can be determined from the plaintiff's motion, he appears to be alleging that he may again be subjected to the same conditions to which he was subjected during October and November, as described above.

### DEFENDANTS' RESPONSE

Defendants Fals, Reese, and Davis filed a response to the plaintiff's motion on January 19, 2010. (Doc. #10). The defendants indicate that the plaintiff is assigned to the Special Management Unit (SMU) at FCI Talladega, which is a more restrictive

living arrangement because it houses high security inmates from around the country who have been too disruptive for general population or even a Special Housing Unit. (Doc. 10-1, p.3). According to the defendants, the SMU at Talladega is "plagued with continuous disruptions, including fires, floods, hostage situations, assaults, suicide attempts, and destruction of property." *Id*. Because of the volatile nature of the unit, "force cell teams" are frequently utilized to place inmates in either four-point or ambulatory restraints for the purpose of gaining control over the inmates and to prevent them from harming property, themselves, or others. *Id*. at 5. An inmate will remain in the restraints until he becomes cooperative and non-combative. *Id*. at 5. However, during the time an inmate is restrained to a bed in four point restraints, he is initially examined by a member of the health services staff, is checked every 15 minutes by officers and reviewed every two hours to ensure that the restraints are not hampering circulation and to allow him to use the toilet.[1] *Id*. at 5-6. The two-hour checks are also utilized to determine if the inmate has calmed down enough to be removed from the restraints. The less restrictive ambulatory restraints allow an inmate to move around his cell and to take care of his own personal hygiene, but an

---

[1] Health Services staff members also review a restrained inmate several times during the day to "ensure he is not in distress." (Doc. #10-1, p.6).

inmate in ambulatory restraints is also checked every two hours by prison staff. *Id*. at 6.

Because of his long history of disruptive behavior at other institutions, the plaintiff was transferred to the SMU at Talladega on August 10, 2009. (Doc. #10-1, p.4).[2] According to the defendants, he has continued this pattern of disruptive behavior while housed at Talladega, including "several incident reports for engaging in sexual acts, possession of a locking device, setting fires, destruction of a life safety device, assault, and disruptive conduct." *Id*. at 4. In addition, the plaintiff has been placed in restraints on several occasions for "attempting to harm himself, self-mutilation, breaking out a window in his cell, refusing to leave the shower, setting a fire outside his cell and disruptive behavior." *Id*. at 5. The defendants provide detailed information regarding the times the plaintiff has been restrained and paint a picture of bizarre and unruly behavior on his part, including acts of defecating in his sink, urinating and defecating on his cell floor, collecting feces in his cell, threatening staff with feces, wiping feces on the window of his cell, kicking and beating on his

---

[2] The plaintiff's infractions included assaults, throwing feces and urine at staff, threatening another person, fighting, possession of a dangerous weapon, engaging in sexual acts, masturbating in front of female officers, interfering with security devices and destroying property. (Doc. #10-1, p.4). Upon his arrival at Talladega, he was discovered with two razor blades and a homemade handcuff key hidden in his rectum. *Id*.

cell door and refusing to use the toilet.³ (Doc. #10-1, pp.5-10; Doc. #10-6, pp.5-8). Additionally, the defendants point out that the plaintiff has refused on several occasions to allow prison staff to remove restraints when it was deemed they were no longer necessary. (Doc. #10-1, pp.7-9).⁴

With respect to the plaintiff's allegation that he has been deprived of adequate nutrition, the defendants expressly state that he has "never been denied a meal" and that "[a]ll inmates in SMU are offered three meals a day." (Doc. #10-1, p.4). If an inmate is being disruptive, he may be temporarily placed on "Alternate Meal Status" which means that a "bag meal" will be substituted for the normal hot meal tray. *Id*. However, bag meals are prepared by the prison Food Service Department and consist of two sandwiches, fruit, and a drink. *Id*. On several occasions during his time in the

---

³ The defendants flatly deny that the plaintiff was housed in a cell where he was unable to use the toilet or that he was forced to stay in a cell contaminated with urine and feces. Because of the plaintiff's history of intentionally backing up toilets to flood the unit, he is housed in a cell in which the toilet must be flushed from outside the cell. (Doc. #10-1, p.9). However, the defendants explain that the toilet is flushed at thirty minute intervals or at the inmate's request. *Id*. Additionally, the defendants demonstrate that it is the plaintiff himself who intentionally contaminates his cell with urine and feces, and that when this occurs his cell is cleaned and sanitized "as soon as time [permits]." *Id*. at 10. The court notes that the plaintiff admits in his complaint that he "protested the use of restraints by smearing feces upon his cell window." (Doc. #1, p.6).

⁴ The defendants also produce copies of voluminous records documenting the 15-minute and two-hour checks made on the plaintiff during times he was restrained. (Docs. #10-11; #10-12 and #10-13).

SMU, the plaintiff has been placed on alternate meal status for seven-day periods because of violations such as throwing feces, refusing to surrender control of the food slot, and setting a fire. *Id*. at 5. The defendants flatly deny the plaintiff's claim that he was not fed for two days. *Id*. at 10. On the contrary, the defendants point out that the plaintiff has refused meals on several occasions. *Id*. at 10.

The defendants also refute the plaintiff's claim that he has been stripped of his personal property, mattress, and linens. They explain that during a forced cell move, all personal property of the inmate is initially removed from the cell, but the mattress, pillow, and blanket remain.[5] (Doc. #10-1, p.6). Any legal documents seized are usually returned the next day, or a plan is implemented to return legal materials in a timely manner. *Id*. Hygiene items are also returned the next day. *Id*.

Finally, Lieutenant Davis addresses the allegation that he threatened the plaintiff's life with a gun and pepper spray on November 25, 2009. Davis states unequivocally that he has never threatened the plaintiff, nor has he observed any other staff member threaten the plaintiff. (Doc. #10-1, p.11). He states that guns are not

---

[5] Lieutenant Davis testifies that because of several disciplinary infractions, it was ordered that the plaintiff's mattress be impounded during daylight hours from 8:00 a.m. to 4:00 p.m. for a period of 30 days. (Doc. #10-1, p.10). However, Davis indicates that it appears this sanction was never implemented. He states that, as the lieutenant in charge of the unit, it would be his job to ensure return of the mattress at 4:00 p.m., but that he has never observed the plaintiff without a mattress during his shift. *Id*.

carried by prison staff inside the institution and that he is unaware of pepper spray ever being used on the plaintiff. *Id*.

### FINDINGS

After thorough consideration of all of the pleadings and exhibits filed herein, the court concludes that the plaintiff has not demonstrated the necessity of either a temporary restraining order or a preliminary injunction. The issuance of a temporary restraining order is an extraordinary remedy to be granted only under exceptional circumstances. *Sampson v. Murry*, 415 U.S. 61 (1974). Motions requesting such relief must be evaluated under strict standards. *Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976). In this instance, the defendants have shown that no exceptional circumstances exist which would justify the issuance of a temporary restraining order. The defendants' thorough response clearly shows that they have taken no actions which would place the plaintiff in imminent danger of irreparable injury, and that to the extent he has been exposed to undesirable living conditions, it is in large part a result of his own actions

A preliminary injunction is also an extraordinary and drastic remedy, the granting of which is the exception rather than the rule. *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). The Eleventh Circuit has established the following

four-factor test which must be met by the moving party in order to demonstrate the need for a preliminary injunction:

> To be entitled to injunctive relief, the moving party must establish that (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.

*Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983).

Based upon the showing made by the defendants, the likelihood of the plaintiff ultimately prevailing on the merits is not only insubstantial, but appears to be remote. Additionally, the defendants have rebutted any effort by the plaintiff to show that he will suffer irreparable injury if the injunction is not granted. As the defendants' response demonstrates, not only has the plaintiff failed to show that he is in imminent danger, but many of the events of which he complains appear to be either exaggerated or the result of his own choices and actions. Accordingly, the plaintiff has failed in his burden to show that the extraordinary remedy of a preliminary injunction is warranted.

For the reasons stated above, plaintiff's motion for a temporary restraining order and/or a preliminary injunction is due to be and hereby is **DENIED**.

The Clerk is **DIRECTED** to serve a copy of this order upon the plaintiff and upon counsel for the defendants.

**DONE** and **ORDERED** this the 10th day of March, 2010.

_____
 **VIRGINIA EMERSON HOPKINS**
 United States District Judge